# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 9:14-cv-80708-KMM
BANKR. COURT NOS. 09-36379-BKC-PGH & 09-36396-BKC-PGH (Jointly Administered)

---

IN RE:  PALM BEACH FINANCE PARTNERS, L.P.,
PALM BEACH FINANCE II, L.P.,

Debtors

---

THE ASHTON REVOCABLE LIVING TRUST and MARIE ASHTON

*Appellants*,

v.

BARRY E. MUKAMAL, in his capacity as Liquidating Trustee for the Palm Beach Finance
Partners Liquidating Trust and the Palm Beach Finance II Liquidating Trust,

*Appellee.*

---

## BRIEF OF APPELLEE

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR SOUTHERN DISTRICT OF FLORIDA

---

Michael S. Budwick
Meland Russin & Budwick, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: 305-358-1212
mbudwick@melandrussin.com

Elliot B. Kula
W. Aaron Daniel
Kula & Associates, P.A.
11900 Biscayne Boulevard, Suite 310
North Miami, Florida 33181
Telephone:  (305) 354-3858
elliot@kulalegal.com
aaron@kulalegal.com
eservice@kulalegal.com

*Co-Counsel for Appellee*

## TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ................................................................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ................................................... 1

STATEMENT OF JURISDICTION ............................................................................ 1

STATEMENT OF THE CASE AND FACTS ........................................................... 2

    I.      Course of Proceedings.......................................................................... 2

    II.     Statement of the Facts. ........................................................................ 3

          A.     The Adversary Proceeding............................................................ 3

          B.     The Joint Mediation...................................................................... 4

          C.     The Settlement Agreement. .......................................................... 5

          D.     The Post-Mediation Communication. ........................................... 5

          E.     The Motion to Approve Settlement............................................... 7

          F.     The Final Order Approving Settlement. ........................................ 8

               (1)    Ashton is *judicially estopped* from avoiding the settlement......................................................................... 9

               (2)    The parties formed an enforceable settlement agreement. ............................................................................ 9

                (3)    Counsel's authority to settle. .................................................. 10

                (4)    There was no requirement of a written agreement. ................... 11

                (5)    The claim of a unilateral mistake was unsupported.................. 12

SUMMARY OF ARGUMENT ................................................................................. 12

ARGUMENT ............................................................................................................. 13

    I.      The Bankruptcy Court Correctly and Properly Exercised its Jurisdiction, and Authority, to Approve the Settlement....................... 13

          A.     Overview..................................................................................... 13

i

## TABLE OF CONTENTS
(Continued)

**Page**

B.      The Motion to Approve was Constitutionally Core. ................................14

C.      The Bankruptcy Court's Rule 9019 Authority. .......................................15

D.      Ashton Waived this Challenge. ..............................................................16

(1)     Parties may impliedly consent adjudication of a
        private right before a non-Article III judge. ................................16

(2)     Ashton impliedly consented to bankruptcy court
        adjudication. ................................................................................17

II.     The Bankruptcy Correctly Ruled, Consistent with its Findings of
        Fact, that the Judicial Estoppel Barred Ashton's Opposition to
        Settlement Approval. .......................................................................................18

III.    The Bankruptcy Court Correctly Ruled, Consistent with its
        Findings of Fact, that the Oral Settlement Agreement was Subject
        to Approval. ......................................................................................................19

A.      The MCMA is Inapplicable, and in Any Event Nowhere
        Requires a Written Agreement. ..............................................................19

B.      The Evidence Supported Approval of the Oral Settlement
        Agreement. ..............................................................................................21

IV.     The Bankruptcy Court Correctly Ruled, Consistent with its
        Findings of Fact, that Ashton's Counsel was Authorized to Settle. ....................24

V.      The Bankruptcy Court Correctly Ruled, Consistent with its
        Findings of Fact, that the Purported Unilateral Mistake was Ms.
        Ashton's Failure to Seek Clarification, Which Would Not Support
        Rescission. .......................................................................................................26

CONCLUSION.........................................................................................................27

CERTIFICATE OF SERVICE ..................................................................................28

# TABLE OF CITATIONS

**Page**

**Cases**

*Am. Litho, Inc. v. Imation Corp.*, 2010 WL 681275 (D. Minn. Feb. 23, 2010) ..........................26

*Am. Nat'l Bank of Jacksonville v. Fed. Dep. Ins. Corp.*, 710 F.2d 1528 (11th Cir.1983) ...........................................................................................................18

*Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015 (8th Cir. 2010) ........................................14, 15

*BP RE, L.P. v. RML Waxahachie Dodge, L.L.C. (In re BP RE, L.P.)*, 735 F.3d 279 (5th Cir. 2013) ...........................................................................................16

*Bramham v. Nev. First Thrift (In re Bramham)*, 38 B.R. 459 (Bankr. D. Nev. 1984) ....................................................................................................................15

*Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002)...............................................19

*Casse v. Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327 (2nd Cir. 1999) .....................................20

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986) ..................................16, 17

*Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012)...................................................................................16

*Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207 (5th Cir. 1981).......................................25

*GBBY EWA Ltd. P'ship v. Fin. Factors, Ltd., (In re Metro. Mortg. & Secs. Co. Inc.)*, -- F. App'x. ----, 2014 WL 3733867 (9th Cir. July 30, 2014) ...............................17

*Goldberger v. Kaplan, Strangis & Kaplan, P.A.*, 534 N.W.2d 734 (Minn. Ct. App. 1995) ....................................................................................................................26

*Haghighi v. Russian-Am. Broad. Co.*, 173 F.3d 1086 (8th Cir. 1999).......................................21

*Haghighi v. Russian-Am. Broad. Co.*, 577 N.W.2d 927 (Minn. 1998)..................................20, 21

*Hanson v. Phillips Beverage Co.*, 487 N.W.2d 925 (Ct. App. Minn. 1992)...............................23

*In re Ambac Fin. Grp., Inc.*, 457 B.R. 299 (Bankr. S.D.N.Y. 2011) ...........................................14

*In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir.1990).......................................................2

*In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir.1999) ...............................................................18

*In re Goerg*, 930 F.2d 1563 (11th Cir. 1991) ................................................................................2

## TABLE OF CITATIONS
### (Continued)

**Page**

*In re Int'l Pharmacy & Discount II, Inc.*, 443 F.3d 767 (11th Cir. 2005) ....................................2

*In re Martin*, 490 F.3d 1272 (11th Cir. 2007) .............................................................1

*In re Superior Homes & Invs.*, *LLC*, 2013 WL 2477057 (11th Cir. June 10, 2013) ....................2

*In re Tidewater Group, Inc.*, 734 F.2d 794 (11th Cir. 1984)...........................................1

*In re Vazquez*, 325 B.R. 30 (Bankr. S.D. Fla. 2005)...................................................15

*In re Williamson*, 15 F.3d 1037 (11th Cir. 1994) .....................................................2

*In re Zapolski*, 2013 WL 1856256 (Bankr. E.D.N.C. May 2, 2013) ...........................................13

*Inversiones Mar Octava Limitada v. Banco Santander S.A.*, 439 F. App'x 840
    (11th Cir. 2011) ...........................................................................2

*Johnson v. Sitzman*, 413 N.W.2d 541 (Minn. Ct. App. 1987)...................................................23

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ..............................................14

*Moga v. Shorewater Advisors, LLC*, 2009 WL 982237 (Minn. Ct. App. April 14,
    2009) ....................................................................................22, 23

*N. Pipeline Constr. Co v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)....................................13

*Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333 (S.D. Fla. 1998)...............21, 23

*Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228 (7th Cir.1988) ...........................2

*Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010)....................................2

*Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (2010) ..............................................19

*Roell v. Withrow*, 538 U.S. 580 (2003) ..............................................................17

*Rosenberg v. Townsend, Rosenberg & Young, Inc.*, 376 N.W.2d 434 (Minn. Ct.
    App. 1985) ................................................................................24

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al.*, 81 F.3d 355 (3d
    Cir.1996) .................................................................................19

*Schultze v. Chandler (In re Colusa Mushroom, Inc.)*, 2014 WL 3537030 (9th Cir.
    July 18, 2014)............................................................................13

iv

## TABLE OF CITATIONS
(Continued)

**Page**

*Schumann v. Northtown Ins. Agency, Inc.*, 452 N.W.2d 482 (Minn. Ct. App. 1990). 21, 24, 25, 26

*Schwartz v. Adamson*, 1999 WL 170676 (Minn. Ct. App. Mar. 30, 1999)............................20, 21

*Skalbeck v. Agristor Leasing*, 384 N.W.2d 209 (Minn. Ct. App. 1986)....................................24

*Specialty Disease Mgmt. Servs., Inc. v. Aids Healthcare Found.*, 2003 WL
  25608009 (M.D. Fla. Oct. 21, 2003) .............................................................................21

*Stern v. Marshall*, 131 S. Ct. 2594 (2011) .............................................................. 12, 13, 15, 17

*Sundale, Ltd. v. Fla. Assocs. Capital Enters., LLC (In re Sundale, Ltd.)*, 499 F.
  App'x 887 (11th Cir. 2012)............................................................................................15

*U.S. v. Webster (In re Yelverton)*, 2014 WL 3882495 (Bankr. D.D.C. Aug. 7,
  2014) ..............................................................................................................................14

*Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012) .......................................................................16

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th
  Cir. 1990) ................................................................................................................14, 15

*Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751 (7th Cir. 2013)..........................................16

*Worthy v. KcKesson Corp.*, 756 F.2d 1370 (8th Cir. 1985) ........................................................25

## TABLE OF CITATIONS
(Continued)

**Page**

### Statutes

28 U.S.C § 636(c) (2012) ................................................................................................17

28 U.S.C. § 1334 (2012) .................................................................................................13

28 U.S.C. § 157(c)(1) (2012) ..........................................................................................17

28 U.S.C. § 158(a) (2012) ................................................................................................1

Minn. Stat. § 481.08 (2012) .....................................................................................25, 26

Minn. Stat. § 572.33 (2012) .....................................................................................20, 21

### Rules

Fed. R. Bankr. P. 8013 .....................................................................................................2

Fed. R. Bankr. P. 9019 ...................................................................................................13

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not request oral argument.  Appellants are appealing the bankruptcy court's final Order Granting Liquidating Trustee's Motion to Approve Settlement with Ashton and Payment of Contingency Fee, and underlying 49-page Findings of Fact and Conclusions of Law issued following an evidentiary hearing.  The 49-page Findings of Fact and Conclusions of Law on Motion to Approve Settlement provides an extensive and detailed recitation of the testimonial and documentary evidence, and resolves disputed issues of fact concerning the settlement agreement's formation, and ratification.   The comprehensive briefs, and the deferential standard of review, should make oral argument unnecessary.

## STATEMENT OF JURISDICTION

The Court has jurisdiction, pursuant to 28 U.S.C. § 158(a) (2012), to review the bankruptcy court's final Order Granting Liquidating Trustee's Motion to Approve Settlement with Ashton and Payment of Contingency Fee, and underlying Findings of Fact and Conclusions of Law on Motion to Approve Settlement.  *See In re Tidewater Group, Inc.*, 734 F.2d 794, 796 (11th Cir. 1984) (order approving settlement is final and appealable); *In re Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007) (order resolving adversary proceeding is final and appealable).

## IN RE: STATEMENT OF THE ISSUES

In each statement of issue, *see* Initial Brief on Behalf of Defendants-Appellants The Ashton Revocable Living Trust and Marie Ashton ("IB") at 1-3, as will be shown in the arguments, Appellants disregard a finding of fact, and doing so dis-serve this Court's standard of review.  That is, Appellants refer in their statement of the issues to "indisputable facts," *id.* at 1, statement 2, and thereafter to factual predicates they would have had the bankruptcy court accept, but of course the evidentiary hearing concerned the disputed evidence and the bankruptcy court's findings of fact are unavoidable and impenetrable on appeal to this Court.

## STANDARD OF APPELLATE REVIEW

This Court, sitting as an appellate court, *In re Williamson*, 15 F.3d 1037, 1038 (11th Cir. 1994), reviews *de novo* the bankruptcy court's legal conclusions, but must accept all findings of fact unless clearly erroneous. Fed. R. Bankr. P. 8013; *In re Goerg*, 930 F.2d 1563, 1566 (11th Cir. 1991). "The bankruptcy court's findings of fact are not clearly erroneous unless, in light of all the evidence, [this Court is] left with the definite and firm conviction that a mistake has been made." *In re Int'l Pharmacy & Discount II, Inc.*, 443 F.3d 767, 770 (11th Cir. 2005). Or, "[t]o be clearly erroneous," the findings "must ... strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir.1988). And, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990) (quoting Fed. R. Bankr. P. 8013).

Additionally, the bankruptcy court's approval of a settlement is reviewed for abuse of discretion. *In re Superior Homes & Invs., LLC*, 2013 WL 2477057, *2 (11th Cir. June 10, 2013). And its application of judicial estoppel is reviewed for abuse of discretion. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010). "[A]buse of discretion review is extremely limited and highly deferential," and this Court "must affirm unless [it] find[s] that the [trial] court has made a clear error of judgment, or has applied the wrong legal standard." *Inversiones Mar Octava Limitada v. Banco Santander S.A.*, 439 F. App'x 840, 841 (11th Cir. 2011).

## STATEMENT OF THE CASE AND FACTS

### I.    Course of Proceedings

Appellee, Barry E. Mukamal, in his capacity as Liquidating Trustee for the Palm Beach Finance Partners Liquidating Trust and the Palm Beach Finance II Liquidating Trust ("Liquidating Trustee"), initiated an adversary proceeding against Appellees, The Ashton Revocable Living Trust ( "Ashton Trust") and Marie Ashton (together, "Ashton"), which the

bankruptcy court sent to mediation.  (AA:1-22).[1]  The Liquidating Trustee returned on a Motion to Approve (1) Settlement with the Ashton Revocable Living Trust and Marie Ashton and (2) Payment of Contingency Fee ("Motion to Approve Settlement"), which Ashton opposed. (AA:109-40; Appellee's App.:3-132).  An evidentiary hearing was held on December 5, 2013. (AA:235-405).  On March 6, 2014, based upon the evidence received, the bankruptcy court entered its Findings of Fact and Conclusions of Law on Motion to Approve Settlement ("Findings of Facts").  (AA: 465-613).  On April 3, 2014, the bankruptcy court entered its Order Granting Liquidating Trustee's Motion to Approve Settlement with Ashton and Payment of Contingency Fee ("Final Order Approving Settlement").  (AA:514-16).  This appeal followed.

## II.    Statement of the Facts.

### A.    The Adversary Proceeding.

Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P. (collectively, "Palm Beach Finance" or the "Debtor"), invested with Thomas Petters and Petters Company, Inc. ("PCI"), which was revealed to be a Ponzi scheme, placed into a federal receivership and eventually filed for bankruptcy in Minnesota; and Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P., resultingly filed their own bankruptcy petitions in Florida, which were jointly administered.  (AA:1-5, 110-11).  The Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation ("Confirmation Order") created the Palm Beach Liquidating Trusts and appointed the Liquidating Trustee.  (AA:2, 111).

The Liquidating Trustee initiated an adversary proceeding against Ashton ("Ashton Adversary Proceeding") alleging unjust enrichment and seeking, pursuant to Minnesota's Uniform Fraudulent Transfer Act, avoidance and recovery of alleged fraudulent transfers and net profits gained by Ashton as a result of Ashton's investment in the Petters' Ponzi scheme via Frank Vennes and Metro Gem, Inc. (collectively, "Vennes Parties").  (AA:1-12).  The PCI

---

[1] Appellees rely on Appellant's appendix of record materials (cited as "AA"), with additional record materials included in an appendix to this brief (cited as "Appellee's App.").

Trustee filed a similar adversary proceeding against Ashton in the Minnesota bankruptcy. *See* AA1466.

### B.     The Joint Mediation.

The Trustees agreed to mediate jointly with Ashton, as well as with other transferees of the Vennes Parties, and to allocate between themselves any recovery obtained under a settlement. *See* AA:23-32.  The bankruptcy court directed the mediation to be held in Minnesota pursuant to its Order Setting Filing and Disclosure Requirements for Pretrial and Trial (AA:13-17) and its Order Granting Liquidating Trustee's Amended Motion for Entry of Order Establishing Uniform Mediation Procedures for Adversary Proceedings (AA:18-20); and it was held in Minnesota on August 21, 2012.  *Id.*  In attendance were the Trustees and their counsel, Daniel Rosen for the Liquidating Trustee and Josiah Lamb for the PCI Trustee, and Ms. Ashton on her own behalf and on behalf of the Ashton Trust along with counsel, Keith T. Appleby.[2]  *See* AA:260, 768.

Former Minnesota Supreme Court Justice James H. Gilbert was the mediator, and at the mediation he had the parties execute his standard pre-mediation agreement, which *inter alia* referenced the Minnesota Civil Mediation Act (the "MCMA") and its requirements.  (AA:764-67).  Neither of the Trustees' counsel interpreted or had any reason to understand from this pre-mediation agreement, however, that the MCMA governed the mediation.  (AA:276, 310-11).  Mr. Rosen understood this reference was "simply an advisory by Justice Gilbert of certain things, and it is not a statement of whether or not something applies."  (AA:318-19).  Ashton believed otherwise, and first stated so in her opposition to the Liquidating Trustee's request for the bankruptcy court's approval of the settlement four months later.  *See* AA:133-40.

---

[2] The mediation was scheduled in Minnesota as a courtesy to Mr. Appleby, to accommodate his desire to mediate as many of his Minnesota cases as possible in one trip, and the mediation took place on the second of three days of mediations with Mr. Appleby's various clients.  (AA:260, 282, 325-26, 339-41).

The mediation ended with an oral settlement agreement between the parties.  (AA:249, 262, 311, 328-30, 396).  Ms. Ashton testified so.  *See* AA:250 ("We had a verbal agreement at mediation ...."); AA:251 ("We had a settlement at the end of mediation."); AA:396 ("We reached an agreement at that time, an oral agreement, yes.").  Justice Gilbert submitted his report to the bankruptcy court, stating that the mediation resulted in a settlement, to which report none of the parties objected.  (AA:300-01, 336, 394-96, 768-69; Appellee's App.:1-2).

### C.      The Settlement Agreement.

Messrs. Appleby, Rosen and Lamb concurred that the principal terms of the settlement were (i) payment by Ashton of $225,000, in exchange for (ii) a global release from the Trustees of any further liability relating to the litigation.  (AA:262, 311, 315, 329-30, 388, 397).  Ms. Ashton agreed, except for the release, which she contended was to be a global release from not only the participating Trustees, but from "anybody who could potentially have a case against [Ashton]," including "everybody who ever invested or lent money to" the Vennes parties (even non-participants in the mediation).  (AA:247-50, 326, 359-64, 388, 392-98).

Mr. Appleby did not share his client's understanding; he understood the global release concerned only the Trustees (*i.e.*, "the parties who were related to the mediation"), and he recalled that he discussed this with Ms. Ashton.  *See* AA:332; Appellee's App.:137-39.  Mr. Appleby admitted he could not recall when he discussed it – and he admitted that he could not say "with absolute certainty" that it was not during the mediation.  *See* Appellee's App.:207-19.  Messrs. Rosen and Lamb recalled with certainty that they discussed the scope of the release at the mediation.  (AA:262-63, 308, 312-13).

Everyone agreed, though, that they exchanged pleasantries at the close of the mediation, and that Ms. Ashton expressed her relief at having settled.  (AA:248-49, 264, 314-15).

### D.      The Post-Mediation Communication.

On August 22, 2012, one day after the mediation, the Liquidating Trustee's counsel, Jessica Wasserstrom, sent a draft settlement agreement to Mr. Appleby, memorializing the terms

of the settlement.  (AA:321, 332, 343; Appellee's App.:239-49).  Mr. Appleby responded on September 4, 2012; he provided a "redline" copy of the draft settlement agreement, proposing nominal revisions and offering no alteration to the release, nor any suggestion that Ms. Ashton had an issue with the release.  (AA:321-22, 332-33, 343;  Appellee's App.:250-62).  Ms. Wasserstrom on the same day returned a revised draft, incorporating Mr. Appleby's changes, and requested return of an executed copy soonest.  (AA:322-23, 344-46; Appellee's App.:280-94). Mr. Appleby forwarded the revised draft settlement to Ms. Ashton on October 12, 2012, following her inquiry regarding the settlement's status.  (AA:362-63).  Thereafter, Ms. Ashton raised with Mr. Appleby her concern over the release, and asked him to address it with the Liquidating Trustee.  (AA:364, 374).

There were numerous e-mails between Ashton's counsel and Ms. Wasserstrom over the next two months, but never was Ms. Wasserstrom advised of a concern with the revised draft agreement, nor was she ever given further comment to the revised draft; and Mr. Lamb likewise never heard any concern.  (AA:264-66, 292-93, 301-04, 336, 344-49, 364-66, 388-89; Appellee's App.:280-94, 295-98).  Even Mr. Appleby admitted that he only spoke *generally* about problems with *some* of the various settlements, but he never specifically identified Ms. Ashton as one of the settling parties with any problem.  *See* Appellee's App.:148-57, 167-68, 191-98.

On November 26, 2012, ahead of the upcoming pretrial conference on all of the Liquidating Trustee's then-pending adversary proceedings ("November 2012 Pretrial Conference"), the Liquidating Trustee filed (and served on Mr. Appleby) his Status Report and Proposed Agenda ("November 2012 Status Report") (AA:77-108), in which he identified the Ashton Adversary Proceeding as "Settled (9019 not yet filed)."  (AA:78-85).  The bankruptcy court, accordingly, on December 3, 2012, dismissed the Ashton Adversary Proceeding, but retained jurisdiction to approve and enforce the reported settlement.  (AA:770-71).  Ashton never

challenged the dismissal order, and on January 12, 2013, the bankruptcy court clerk closed the Ashton Adversary Proceeding.[3]

In further follow-up communications regarding the status of the revised draft settlement agreement, new counsel appeared for Ashton, Helen Chaitman, who advised the Liquidating Trustee for the first time more than four months after the mediation that Ms. Ashton would not be going forward with the settlement.  (Appellee's App.:303-05).

> ### E.     The Motion to Approve Settlement.

The Liquidating Trustee, pursuant to the bankruptcy court's reservation of jurisdiction, moved for final approval of the settlement.  (AA:109-32).  The motion outlined the adversary proceeding and the mediation, and set forth the settlement's "[k]ey terms":  (i) Ashton will pay $225,000.00, of which $90,000.00 would be allocated to the Liquidating Trustee and $135,000.00 would be allocated to the PCI Trustee; (ii) the parties will exchange mutual and general releases; (iii) payment will be made within 30 days after entry of the order (by the Minnesota bankruptcy court) approving the settlement; (iv) the Liquidating Trustee will seek dismissal of the Ashton Adversary Proceeding; and (v) Ashton will forfeit any entitlement to a distribution from either Palm Beach Finance Parties' bankruptcy estate or the PCI bankruptcy estate.  (AA:115).  The Liquidating Trustee argued that, under the applicable standard for approval of settlements, the oral settlement agreement should be approved.  (AA:116-18).

Ashton opposed approval of the settlement because:  (i) there was no agreement as reflected by the absence of a writing; (ii) any agreement was not enforceable because it was not reduced to writing as required by the MCMA; (iii) any oral agreement was lacking key terms; and (iv) any settlement was conditioned upon Ashton receiving a release from all potential future

---

[3] Meanwhile, on November 27, 2012, the PCI Trustee moved to approve the settlement in the Minnesota PCI bankruptcy proceeding (the "Minnesota 9019 Motion"), without opposition by Ms. Ashton or anyone on her behalf, and the Minnesota bankruptcy court entered an Order granting the Minnesota 9019 Motion and approving the identified settlements (the "Minnesota 9019 Order") on December 20, 2012.  See AA:120-22.

clawback lawsuits, not just those held by the participating Trustees, which release the Liquidating Trustee failed to provide.  (AA:133-40).

The Liquidating Trustee countered in his reply, (Appellee's App.:3-17), that it was never agreed that the MCMA would govern the mediation, and it could not be drawn from the mediator's form pre-mediation agreement's boilerplate reference to the MCMA, which served merely to satisfy the mediator's obligation to advise of the MCMA.  (Appellee's App.:12). Moreover, the Liquidating Trustee posited: (i) the MCMA enforcement provision pertains only to a "mediated settlement agreement," defined as a written agreement, and not an oral settlement agreement as operated between the parties in this case.  (Appellee's App.:9-10).  Applicable are traditional contract principles, the Liquidating Trustee argued, under Minnesota law, because the contract was formulated in Minnesota, and that such law contravenes Ashton's position. (Appellee's App.:10-11).  Next, the Liquidating Trustee argued Ashton was judicially estopped from opposing the settlement for failing to object when the settlement was before the Minnesota bankruptcy court for approval, for failing object when the Florida bankruptcy court was advised of the settlement in the November 2012 Status Report, and for failing to object to the dismissal of the Ashton Adversary Proceeding.  (Appellee's App.:12-14).  And finally, regarding the release, the Liquidating Trustee maintained that the terms of the settlement as set out in the mediator's report did not include a release from any other party, nor could a release from another party, a non-participant in the mediation, reasonably have been expected to be part of the agreement.  (Appellee's App.:14-16).

### F.    The Final Order Approving Settlement.

The bankruptcy court, following an evidentiary hearing, (AA:235-405), entered its 49-page Findings of Facts, in which it resolved disputes in recollection and made witness credibility determinations, and explained its conclusions of law.  (AA:465-513).  First, the bankruptcy court found credible the testimony of Messrs. Lamb and Rosen as to both the occurrence of the discussion at the Mediation and the substance of the discussion.  (AA:476-77).  Second, the

bankruptcy court found credible the testimony of Ms. Wasserstrom and Mr. Lamb on the exchange of the revised draft agreement, and found that Mr. Appleby never informed either Ms. Wasserstrom or Mr. Lamb that Ms. Ashton had problems with the revised draft agreement or with the settlement in general.  (AA:480-81).

### (1)    Ashton is *judicially estopped* from avoiding the settlement.

The bankruptcy court found, *as a matter of fact*, that:

(1) [Ashton] did not object at the November 2012 Pretrial Conference to the characterization of the Ashton Adversary Proceeding as settled; (2) [Ashton] did not seek relief from the Dismissal Order; (3) [Ashton] did not seek to reopen the Ashton Adversary Proceeding after it was dismissed as settled and closed; (4) [Ashton] did not file an objection to the Minnesota 9019 Motion; (5) [Ashton] did not raise an objection at the hearing on the Minnesota 9019 Motion; and (6) [Ashton] did not seek relief from the Minnesota 9019 Order.

(AA:485-86).  The bankruptcy court thus "agree[d] that [Ms. Ashton] should have raised an objection earlier and that [her] failure to do so warrants the application of judicial estoppel," adding that to allow Ashton to maintain inconsistent positions would (i) "create the perception that the bankruptcy courts were misled," and (ii) "impose an unfair detriment on the Liquidating Trustee and the Debtors' bankruptcy estates as the Liquidating Trustee has ceased preparing to move forward with the Ashton Adversary Proceeding and the Debtors' estates have been forced to spend significant funds litigating the enforceability of the parties' settlement agreement." (AA:486-87).

### (2)    The parties formed an enforceable settlement agreement.

The bankruptcy court ruled that the settlement dispute is governed by Minnesota law, because the agreement was completed there, and under Minnesota's law on general contract principles, (AA:488-89), a settlement is enforceable where there has been "such a definite offer and acceptance that it can be said that there has been a meeting of the minds on the essential terms of the agreement," and "whether the parties had a meeting of the minds, courts consider only the objective manifestations of the parties."  (AA:489-90).

The bankruptcy court recognized that the MCMA can alter general contract principles, but ruled that nothing in the MCMA requires that a settlement agreement must be in writing or in any way makes oral settlement agreements unenforceable.  (AA:491-92).  And the MCMA provision which addresses enforceability of a "mediated settlement agreement," which the MCMA defines as a written settlement agreement, is wholly inapplicable, the bankruptcy court ruled, to a dispute concerning the approval of an oral settlement agreement as presented in this case.  (AA:492-93).

On the question of the meeting of the minds, the bankruptcy court found based on the testimony and documentary evidence that the essential terms were agreed to and thus an enforceable contract was formed – that is, as a matter of fact, the bankruptcy court found, all of the mediation participants "believed the parties reached a settlement at the Mediation." (AA:494-96).  The bankruptcy court rejected as incredible Ms. Ashton's asserted understanding of the scope of the release, finding that "Ms. Ashton and the Trustees objectively assented to a 'global' release of Ms. Ashton from any liability stemming from the claims *held by the Trustees*."  (AA:496-97).  The bankruptcy court chose to credit (i) Messrs. Rosen's and Lamb's testimony on the circumstances of the mediation, (AA:476-77, 497-98), and (ii) Ms. Wasserstrom's and Mr. Lamb's testimony on the nature of the post-mediation communication between counsel, throughout which Ms. Ashton never asserted any problem or concern with the release, (AA:480-81, 498-99).  Ms. Ashton's unmanifest intentions, the bankruptcy court ruled, could not prevail to avoid the settlement.  (AA:499-500).

### (3)    Counsel's authority to settle.

The bankruptcy court found that the exchange of emails between Ashton's counsel and the Liquidating Trustee's counsel, including an exchange of draft agreements, to which Ashton's counsel made minor and non-substantive changes, "effectively ratified, in writing, the parties settlement and the terms of that settlement as memorialized in the Revised Draft Agreement." (AA:500-01).  *And see* AA:480-81 (crediting Ms. Wasserstrom's and Mr. Lamb's testimony on

these discussions).  Indeed, as the bankruptcy court found, Ashton's counsel even advised "that he was waiting on an executed settlement agreement from Ms. Ashton."  (A:501).

Alternatively, the bankruptcy court ruled that principles of implied acceptance and estoppel supported the same conclusion.  (AA:501-03).  That is, the bankruptcy court found, "Ms. Ashton and Mr. Appleby left the mediation believing that Ms. Ashton and the Trustees reached a settlement agreement," and "Ms. Ashton ultimately allowed more than four months to pass before her new attorney, Ms. Chaitman, informed Ms. Wasserstrom that Ms. Ashton refused to proceed with the settlement."  (AA:503).  In fact, the bankruptcy court observed, "it was only after Ms. Ashton consulted with her new attorney that the Trustees learned that Ms. Ashton refused to proceed with the settlement," by which time "the Trustees had ceased preparing to move forward with their cases against [Ashton], had obtained the Minnesota 9019 Order, and had obtained a dismissal of the Ashton Adversary Proceeding."  *Id.*

### (4)    There was no requirement of a written agreement.

The bankruptcy court found, as a matter of fact, that there was no agreement that the settlement had to be in writing to be binding.

> Here, neither Ms. Ashton nor the Trustees objectively stated that an executed written contract was a condition precedent to the settlement.  Mr. Lamb testified at Trial that he did not believe the agreement reached at Mediation was "simply talk" which was not binding until reduced to an executed signed writing. Likewise, Mr. Rosen testified that he did not tell Mr. Appleby that whatever was discussed on the day of the Mediation was simply a discussion until there was an executed written settlement agreement.  When asked whether he thought that either of the Trustees could have asked for additional money in exchange for the releases after the Mediation concluded, Mr. Rosen replied in the negative because the parties' settlement agreement was complete.

(AA:505-06).  The bankruptcy court rejected Mr. Appleby's testimony regarding his expectation, ruling that "an *expectation* that the parties would eventually execute a formal written agreement is not equivalent to *requiring* the execution of a formal written agreement as a *condition precedent* to the parties being bound by the agreement."  (AA:507) (emphasis added).  And the bankruptcy court rejected Ms. Ashton's purported expectation of a writing:  "[E]ven if Ms.

Ashton and Mr. Appleby subjectively believed that the settlement agreement would not be binding until the parties executed a written agreement, [Ashton] presented no evidence that either Ms. Ashton or Mr. Appleby made this belief known to the Trustees, Mr. Lamb, or Mr. Rosen." (AA:508).

**(5)      The claim of a unilateral mistake was unsupported.**

Ms. Ashton's purported unilateral mistake, the bankruptcy court ruled, did not form a basis for rescission, nor is there any contention of fraud or misrepresentation to justify an avoidance of the settlement agreement.  (AA:509-11).  The bankruptcy court explained:

> Even if there was ambiguity, Ms. Ashton bears the risk of her mistake. Ms. Ashton could have asked her attorney or Justice Gilbert to clarify the terms of the release.  Furthermore, if Ms. Ashton was indeed mistaken as to the terms of the release or the ability of the Trustees to release her from liability as to other potential claimants, she should have been aware that she possessed insufficient knowledge and sought clarification.

(AA:511-12).

**SUMMARY OF ARGUMENT**

The bankruptcy court had jurisdiction and authority to approve the oral settlement agreement, and Ashton's attempt to draw a jurisdictional issue from *Stern v. Marshall*, 131 S. Ct. 2594 (2011), is unfounded, and disregards otherwise controlling precedent.  In any event, the argument, even if accepted, serves only to enable this Court's *de novo* review, which should not alter the outcome given the inconsistent positions taken by Ashton's witnesses and the documentary evidence that would belie their position.  And the bankruptcy court, based on its findings of fact that are impenetrable on appeal, properly determined under application of governing law, that the oral settlement agreement achieved following the Mediation was agreed to and properly approved as a final and complete resolution of the Ashton Adversary Proceeding.  Ashton's flouting of both the bankruptcy court's efforts reflected in its 49-page Findings of Fact, and this Court's standard of review, should not be countenanced.

## ARGUMENT

**I.   The Bankruptcy Court Correctly and Properly Exercised its Jurisdiction, and Authority, to Approve the Settlement.**

Ashton argues for the first time on appeal that the bankruptcy court lacked jurisdiction and authority to enter the Final Order Approving Settlement, relying generally on *Stern v. Marshall*, 131 S. Ct. 2594 (2011). *See* IB at 14-17. The argument is waived, and incorrect.

### A.   Overview.

Notably, Ashton does not contend, nor could Ashton contend, that the matter adjudicated by the Order Approving Settlement did not "arise in," "arise under," or was "related to" a case under title 11. 28 U.S.C. § 1334 (2012). That is to say, the district court had original jurisdiction over the matter of the approval of the oral settlement of the Ashton Adversary Proceeding, and approval of the settlement was subject to referral to a non-Article III judge for final disposition. Nothing in *Stern* undermines the statutory grant of jurisdiction pursuant to 28 U.S.C. § 1334.

Indeed, *Stern* clarified that an Article I judge may properly enter final orders as to matters of "public rights," 131 S. Ct. at 2597-98 (citing *N. Pipeline Constr. Co v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)), and the Supreme Court identified two categories of bankruptcy matters that constitute "public rights": an action that stems from the bankruptcy itself, and an action that would necessarily be resolved in the claims-allowance process. *Id.* at 2611, 2618. Here, the Final Order Approving Settlement – an order approving a motion to compromise a controversy under Fed. R. Bankr. P. 9019 – concerned the administration of the estate, and thus "stem[ed] from the bankruptcy itself" so that it was a constitutionally core matter. *Schultze v. Chandler (In re Colusa Mushroom, Inc.)*, 2014 WL 3537030 (9th Cir. July 18, 2014), *as amended* (Aug. 1, 2014); *In re Zapolski*, 2013 WL 1856256 (Bankr. E.D.N.C. May 2, 2013). Indeed, a motion under Rule 9019 has no existence outside the bankruptcy itself. *Schultze*, 2014 WL at *3. It is "inseparable from the bankruptcy case," unquestionably making it a public right, allowing for the bankruptcy court to enter a final order. *Id.*

13

"Whatever *Stern* ... may ultimately be held to mean ... as a matter of law and practice, it most certainly does not stand for the proposition that the bankruptcy court cannot approve the compromise and settlement of a claim which is indisputably property of a debtor's estate." *In re Ambac Fin. Grp., Inc.*, 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011), *aff'd*, 2011 WL 6844533 (S.D.N.Y. Dec. 29, 2011), *aff'd*, 487 F. App'x 663 (2d Cir. 2012).

**B.      The Motion to Approve was Constitutionally Core.**

Ashton asserts that the distinction between a ruling on the underlying fraudulent transfer claim and the approval of its settlement is "irrelevant where ... the enforceability of the settlement is at issue [because the] Decision effectively [entered] a final order disposing of the Trustee's fraudulent transfer claim."  IB at 15.  Ashton offers no authority for this proposition, and none exists because it is contrary to Supreme Court precedent.

The enforcement of a settlement agreement arising from litigation is an adjudication of a contract dispute, not a disposition of the underlying claim; it is not a ruling on the merits of the settled dispute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990).  And jurisdiction and power to enforce a settlement agreement has nothing to do with the jurisdiction and power to adjudicate the underlying claim (absent some explicit reservation of jurisdiction not at issue in this case). *Id.*  So it is indeed irrelevant that the underlying fraudulent transfer action presents a *Stern* claim.

Even post-*Stern*, "bankruptcy courts have inherent power to enforce settlement agreements between parties." *U.S. v. Webster (In re Yelverton)*, 2014 WL 3882495 *3 (Bankr. D.D.C. Aug. 7, 2014) (reporting and recommending denial of withdrawal of the reference because the bankruptcy court had the authority to enforce).  "It is a recognized principle of bankruptcy law that a bankruptcy court is required to approve any compromise or settlement proposed in the course of a Chapter 11 reorganization before such compromise or settlement can be deemed effective." *Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1024 (8th Cir. 2010).

And "[a]bsent compliance with the [ ] requirements of notice, hearing, and court approval [in the bankruptcy case], a purported settlement or compromise is unenforceable." *Bramham v. Nev. First Thrift (In re Bramham)*, 38 B.R. 459, 465 (Bankr. D. Nev. 1984). It follows, therefore, that "enforce[ment of a settlement] agreement [is] not independent — it [is] inherently intertwined with the bankruptcy proceeding." *Am. Prairie,* 594 F.3d at 1025.

Because the enforcement of the settlement is inherently intertwined with the bankruptcy proceeding, the Motion to Enforce *stems* from the bankruptcy proceeding, and calls for an adjudication of a public right. Therefore, the bankruptcy court could enter a final order.

### C.    The Bankruptcy Court's Rule 9019 Authority.

In *Stern*, the "Supreme Court held that bankruptcy courts lack 'the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.'" *Sundale, Ltd. v. Fla. Assocs. Capital Enters., LLC (In re Sundale, Ltd.)*, 499 F. App'x 887, 892-93 (11th Cir. 2012) (quoting *Stern*, 131 S. Ct. at 2620). But it "follow[s] that a bankruptcy court would have jurisdiction to enter final judgment on state law counterclaims that are necessarily resolved in the process of ruling on a creditor's proof of claim." *Id.* at 893. The point is: Where there is constitutional authority to resolve the claim, there is authority to resolve the counterclaims too; and it is analogous here, that where there is authority to rule on the 9019 Motion there is also authority to resolve its necessary elements.

"It is a fundamental tenet of bankruptcy jurisprudence that the proponent of a settlement ... bears the burden of demonstrating that the proposal is both reasonable and in the best interests of the bankruptcy estate." *In re Vazquez*, 325 B.R. 30, 35 (Bankr. S.D. Fla. 2005). The bankruptcy court weighs such a proposal against the probability of success in the litigation; the difficulties to be encountered in the matter of collection; the complexity of the litigation involved; and the paramount interest of the creditors. *Justice Oaks II*, 898 F.2d at 1549. And, certainly, no court could pass on the reasonableness of *a proposal* without establishing what the *proposal is*. So it follows that, in determining the indisputably core matter of the 9019 Motion,

the bankruptcy court necessarily determined whether and on what terms there was an agreement between Ashton and the Liquidating Trustee. This is underscored by the fact that the bankruptcy court felt it necessary to hold the evidentiary hearing to determine the existence and terms of the settlement *prior* to ruling on the Motion to Approve Settlement.

Just as a bankruptcy court may enter final judgment on a state-law counterclaim fully resolved in passing on the indisputably core adjudication of a proof of claim, the bankruptcy court had authority to enter a final order on the enforcement of the settlement agreement in passing on the indisputably core Motion to Approve Settlement.

> ### D.   Ashton Waived this Challenge.
>
> #### (1)   Parties may impliedly consent adjudication of a private right before a non-Article III judge.

The question whether a litigant may impliedly consent to adjudication of a non-core matter before a bankruptcy court remains in flux post-*Stern*. The Fifth, Sixth, and Seventh Circuits have held that a litigant cannot consent. *Waldman v. Stone*, 698 F.3d 910, 917-18 (6th Cir. 2012); *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751 (7th Cir. 2013), *cert. granted in part*, 83 U.S.L.W. 3011, (U.S. July 1, 2014) (No. 13–935); *BP RE, L.P. v. RML Waxahachie Dodge, L.L.C. (In re BP RE, L.P.)*, 735 F.3d 279, 286-87 (5th Cir. 2013). The Ninth Circuit has held that a litigant can implicitly consent through its litigation conduct. *Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 556-57 (9th Cir. 2012). And it is the Ninth Circuit's reasoning that most conforms to the Supreme Court's longstanding jurisprudence concerning consensual adjudication before non-Article III tribunals.

The Supreme Court has noted that "Article III, § 1's guarantee of an independent and impartial adjudication by the federal judiciary of matters within the judicial power of the United States ... serves to protect primarily personal, rather than structural, interests." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986). And the Supreme Court's

decision in *Roell v. Withrow*, 538 U.S. 580 (2003), concerning implied consent pursuant to 28 U.S.C § 636(c) to final judgments by federal magistrate judges is particularly instructive.[4]  In *Roell,* the Supreme Court rejected the argument that express consent was required for consensual adjudicative power.  538 U.S. at 582, 586–87.  Instead, the Supreme Court held that the parties' implied consent suffices.

Even in *Stern*, the Supreme Court noted, without question, that "parties may consent to entry of [a] final judgment by [the] bankruptcy judge in [a] non-core case."  131 S. Ct. at 2607 (citing 28 U.S.C. § 157(c)(2)).

### (2)    Ashton impliedly consented to bankruptcy court adjudication.

Recently, the Ninth Circuit decided *GBBY EWA Ltd. P'ship v. Fin. Factors, Ltd., (In re Metro. Mortg. & Secs. Co. Inc.)*, -- F. App'x. ----, 2014 WL 3733867 (9th Cir. July 30, 2014), a case strikingly similar to this case.  *GBBY* arose out of an appeal of a bankruptcy-court order enforcing a settlement agreement, not unlike the agreement at issue in this case.  *Id.* at 1-2.  In *GBBY*, just as in this case, the Appellant waited until the "eleventh hour" to raise arguments as to subject matter jurisdiction and Article III power, having not raised the argument before the bankruptcy court.  *Id.* at 2.  While the Ninth Circuit noted that subject matter jurisdiction may be raised at any time (and affirmed subject matter jurisdiction on grounds not applicable to this case), the Ninth Circuit held that "unlike subject matter jurisdiction, the guarantee of an Article III hearing is subject to waiver because the right protects primarily personal, rather than structural, interests."  *Id.* at 2-3 (citing *Schor*, 478 U.S. at 848) (quotations and citations omitted).  By waiving the argument, the Ninth Circuit held that the Appellant "consented to the bankruptcy court's final orders or judgment" and thus "there was no constitutional infirmity."  *Id.* at 3.

---

[4] Section 636(c)(1) provides similar, but even broader, authority than the bankruptcy scheme.  Upon consent, magistrates may enter final judgments in *all* civil proceedings.  *Compare* 28 U.S.C. § 636(c)(1) with 28 U.S.C. § 157(c)(1).

Since *Stern*, all litigants have been on notice that, if involved in a controversy before the bankruptcy court which involves a private right, they have a legal right to object and must take action to vindicate their right.  Ms. Ashton would have this Court excuse her from such notice. She frames her participation in the proceeding as necessary to preserve her rights.  *See* IB at 17. But her conduct reflects precisely otherwise.  That is, had Ms. Ashton intended to preserve her rights, she could have filed a motion to withdraw the reference.  Or, she could have objected to either of the motions for lack of authority to adjudicate a private right.  But instead she took her chances before the bankruptcy court, in an evidentiary proceeding, and only after her position was rejected as *factually incredible*, did she seek on appeal to assert the *Stern* issue, thereby to avoid the more onerous standards of review that would apply to the factual findings and the settlement approval.  The attempt should be rejected.

## II.     The Bankruptcy Correctly Ruled, Consistent with its Findings of Fact, that the Judicial Estoppel Barred Ashton's Opposition to Settlement Approval.

Ashton asserts that the bankruptcy court "totally misunderstood the doctrine of judicial estoppel," which Ashton contends could not apply because (i) the conduct on which the bankruptcy court relied did not reflect a contrary position "under oath," and (ii) the bankruptcy court made erroneous factual findings as to the position by Ashton regarding the Minnesota 9019 Motion filed and approved there, and as to the characterization of the Ashton Adversary Proceeding as settled on the November 2012 Status Report.  *See* IB at 17.   Ashton misunderstands judicial estoppel.  Simply, Ashton failed to oppose the Minnesota 9019 Motion, and so Ashton is judicially estopped from opposing the virtually identical proceeding in Florida.

Judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence.  *See, e.g., Am. Nat'l Bank of Jacksonville v. Fed. Dep. Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir.1983) (explaining that judicial estoppel applies to the "calculated assertion" of divergent positions); *see also In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir.1999) (explaining that judicial estoppel applies when "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice") (internal

quotations and citation omitted); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al.*, 81 F.3d 355, 362-63 (3d Cir.1996) (explaining that "judicial estoppel does not apply when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court"). But, "[w]hile an estopped party's contradiction must be intentional, such intent may be inferred from the record." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275 (2010) (citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002)).

Here, the bankruptcy court found that the situation did not involve inadvertence; rather, Ashton failed to object to the Minnesota 9019 Motion and failed to speak up in the face of the November 2012 Status Report in the bankruptcy court, and such failures established the evidentiary basis upon which the bankruptcy court inferred that there was an intentional conduct. *See* AA:485-87. Ashton thus is left to argue that the bankruptcy court made clearly erroneous factual findings. *See* IB at 18. But no clear error has been shown, rather only a countervailing view of the testimonial and documentary evidence, which is not clear error. *See* Standard of Review, *supra*.

### III. The Bankruptcy Court Correctly Ruled, Consistent with its Findings of Fact, that the Oral Settlement Agreement was Subject to Approval.

#### A. The MCMA is Inapplicable, and in Any Event Nowhere Requires a Written Agreement.

First, nowhere in the record is there any evidence of an intent to be bound by the MCMA. As a proceeding mandated by the Florida bankruptcy court's pretrial order, the mediation, though held in Minnesota, was conducted pursuant to the Florida bankruptcy court's procedural rules and guidelines, and governed by its orders. (AA:13-17, 18-20). And nothing in the bankruptcy court's procedural rules and guidelines, nor in its pretrial orders pertaining to the mediation, reflects an intent to subject the parties to the MCMA. Rather, as the bankruptcy court recognized, allowing for the joint mediation in Minnesota was intended merely to accommodate

Mr. Appleby and to minimize litigation costs.[5]  (AA:260, 282, 325-26, 339-41).  And of course, deference should be given to the bankruptcy court's interpretation of its own order.  *E.g.*, *Casse v. Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 332-33 (2nd Cir. 1999).

To be sure, the form pre-mediation agreement signed by the participating parties referenced the MCMA, *see* AA:764-67, but it was nothing more than a boilerplate provision. That is, the mediator fulfilled his obligation pursuant to Minn. Stat. § 572.33 (2012) to inform the parties of his disinterested status, and rights existing under the MCMA in the event of a mediated settlement agreement, *i.e.*, that a written agreement "may adversely affect" rights so that counsel should be consulted before its execution, and that such written agreement would not be binding in the absence of certain preconditions.  Nothing in the pre-mediation agreement's boilerplate MCMA provision, however, reflects that the MCMA shall govern.  Indeed, such a boilerplate provision in a form pre-mediation agreement is a far cry from the sort of mediation agreement considered in *Haghighi v. Russian-Am. Broad. Co.*, 577 N.W.2d 927, 930 (Minn. 1998), *see* IB at 19-20, which involved a mediation session expressly conducted pursuant to the MCMA, or *Schwartz v. Adamson*, 1999 WL 170676, *1 (Minn. Ct. App. Mar. 30, 1999), *see* IB at 20, which involved a mediation pursuant to a pre-mediation agreement that "fully incorporate[d] the [MCMA] by stating that mediation is a voluntary process and that the parties intend for the mediation process to comply with the [MCMA]."

Second, in any event, nowhere in the MCMA is there a requirement that a settlement agreement must be in writing to be enforceable.  Ashton misleads the Court by bolding certain words in an attempt to string them together to create that impression.  *See* IB at 4.  The MCMA's language, however, is clear:  *In the event* the parties proceed on a "mediated settlement agreement," which the MCMA defines as a written settlement agreement, then in that event such

---

[5] *See* AA:14-15 (requesting that the Court enter uniform mediation procedures to "effectuate the mediation provisions of the Court's Pretrial Order and ensure an orderly process" and requesting the approval of three possible mediators to "avoid incurring substantial time addressing mediator selection with a multitude of Defendants").

written agreement must comply with certain conditions. Minn. Stat. § 572.33, subd. 4. That is to say, the MCMA's enforceability requirements, on which Ashton would like to rely, apply only where there has been "a written agreement setting out the terms of a partial or complete settlement of a controversy identified in an agreement to mediate, signed by the parties, and dated." *Id*. That is not the case here. Here, there was an *oral* settlement agreement, not a "mediated [written] settlement agreement." *Id*. Nothing in the MCMA makes oral settlement agreements non-binding, and nothing in the MCMA can be said to alter the general principles of contract law as applied by the bankruptcy court.[6]

### B.    The Evidence Supported Approval of the Oral Settlement Agreement.

Ashton's contention that the oral settlement is unenforceable under "traditional principles of contract law," *see* IB at 20, persists in positing a countervailing view of the evidence, which view the bankruptcy court rejected, and which view is unavailable to Ashton on appeal.

First, under Minnesota law, a written agreement is not a prerequisite to the enforcement of a settlement. *Schumann v. Northtown Ins. Agency, Inc.*, 452 N.W.2d 482, 484 (Minn. Ct. App. 1990) (citation omitted).[7]

Second, while Ashton contends that there was no intent to be bound until after the agreement was reduced to writing, *see* IB at 21, the bankruptcy court found, based on the testimonial evidence, that no such condition was ever expressed to or understood by the Trustees

---

[6] *Cf. Haghighi*, 577 N.W.2d at 928 (applying MCMA to hold that a *written agreement* which did not include provision that it is a binding agreement as required by the MCMA was unenforceable under the MCMA); *accord Haghighi v. Russian-Am. Broad. Co.*, 173 F.3d 1086 (8th Cir. 1999) (confirming that issue was decided in case in which MCMA was held applicable); *Schwartz v. Adamson*, 1999 WL 170676, *1 (Minn. Ct. App. Mar. 30, 1999) (applying MCMA to "mediated [written] settlement agreement" and holding it unenforceable for failing to include clause stating it was binding).

[7] *See also*, *e.g.*, *Specialty Disease Mgmt. Servs., Inc. v. Aids Healthcare Found.*, 2003 WL 25608009, *3 (M.D. Fla. Oct. 21, 2003) (enforcing oral settlement agreement); *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1341 (S.D. Fla. 1998) (holding "[i]t is not necessary under Florida law to reduce an agreement to writing to bind the parties, as long as the parties intend to be bound at the time of the oral agreement.").

or their counsel at the mediation. (AA:492-93). And beyond ignoring the testimony credited by the bankruptcy court, Ashton persists in recalling the pre-mediation agreement's boilerplate MCMA provision, which it contends the bankruptcy court "ignor[ed]," and persists in misstating the MCMA provision as adopting a binding requirement that a written settlement agreement was required. IB at 21. That is, Ashton states again that the pre-mediation agreement's MCMA provision "explicitly sets forth … an objective manifestation of Ashton's intent not [to] be bound until a written settlement is executed." *Id.* But repeating the contention does not overcome the pre-mediation agreement's language, nor can Ashton use its untenable view of the pre-mediation agreement's MCMA provision to rewrite the MCMA to include a requirement that a settlement must be in writing to be enforceable. The law is not subject to being rewritten by stringing together bolded words, *see* IB at 4, and Ashton's attempt to do so should be rejected.[8]

So, "general principles of contract law," AA:489, remain prevalent in this case. To that end, it is agreed between the parties that "Minnesota courts determine the existence of a contract using strictly objective measures." *Moga v. Shorewater Advisors, LLC*, 2009 WL 982237, *6 (Minn. Ct. App. April 14, 2009). *See* IB at 22. The mere fact of the drafting of a written agreement to memorialize the settlement, as a best practice, and the subsequent exchange of revisions to the draft, does not engraft a written settlement requirement into the settlement agreement.

> An unwritten contract may exist if neither party has clearly expressed the intent to be bound only by a formalized written agreement, even if both parties intended that the agreement eventually would be reduced to writing.

2009 WL at *5. And, "where the parties have assented to all the essential terms of the contract and proceed to perform in reliance upon it," even "expressed contemplation of a more formal

---

[8] Moreover, Ashton's suggestion that "the bankruptcy court committed error when it accepted the patently incredible testimony of [the Trustees' counsel at mediation] that they did not think an agreement reached at mediation needed to be reduced to writing to be enforceable," IB at 22, reflects just how far Ashton is willing to stretch the record and the standard of review.

document" "will not negat[e] the existence of the present, binding contract." *Id.* (citation and internal quotations omitted).[9]   "Simply because the parties contemplated the drafting of a subsequent formal, written contract, does not denote that they did not intend to be bound immediately by their oral or written negotiations." *Nautica Int'l*, 5 F. Supp. 2d at 1341. *And see, e.g., Johnson v. Sitzman*, 413 N.W.2d 541, 544-45 (Minn. Ct. App. 1987) (holding that oral acceptance of settlement offer was enforceable even where party subsequently refused to sign written agreement);

Objective evidence of a settlement was presented to the bankruptcy court, as the bankruptcy court so found. *See* AA:488-500. Ashton's suggestion that the Trustees' counsel's testimony should be suspect because they purportedly were "beneficiaries of a contingency fee agreement," (IB at 22-23), finds no basis in the record, and ignores the bankruptcy court's credibility determination respecting the Trustees' counsel's testimony.  And the laundry list of evidence Ashton suggests the bankruptcy court ignored, (IB at 23), offers nothing more than its further attempt to prevail on a countervailing view of the facts.

- That the Liquidating Trustee's counsel prepared and emailed a draft settlement agreement, (*id.*), which was good practice, does not serve retroactively to inject a requirement of a written agreement as a condition precedent.

- The suggestion that the Liquidating Trustee's counsel confirmed after the mediation that the settlement would be binding only if in writing, (*id.*), is controverted by testimony *and e-mails*.

- The suggestion of false statements to the Minnesota bankruptcy court to procure its approval of the settlement, (*id.*), is undermined by the fact that Ashton never opposed approval, nor followed up to seek its vacatur.

---

[9] *Cf., Hanson v. Phillips Beverage Co.*, 487 N.W.2d 925, 927 (Ct. App. Minn. 1992) (holding that a formal written agreement was necessary where the letter of intent required it by expressly stating that it shall not be binding "until the execution of the definitive purchase agreement").

- The reference to the Liquidating Trustee's position on settlements in other matters, (*id.*), while factually inaccurate, does nothing to alter the evidence of events and proceedings leading the bankruptcy court to approve the oral settlement.

- The delay in seeking bankruptcy court approval of the oral settlement, (*id.*), reflects not on the Liquidating Trustee, but on Ashton and its counsel, who sat on the revised draft settlement.

And so, whereas Ashton purports to point to "[a]ll this evidence," which Ashton says "proves that parties understood that any agreement reached at the mediation would not be binding until it was incorporated into a signed settlement agreement," (*Id.*), such "evidence" actually provides nothing to undermine the bankruptcy court's 49-page Findings of Fact.  Perhaps the greatest admission by Ashton is their statement that "the bankruptcy court's factual findings to the contrary are insupportable," (*Id*)., which ignores the record and flouts the standard of review, and should not be countenanced.

**IV.    The Bankruptcy Court Correctly Ruled, Consistent with its Findings of Fact, that Ashton's Counsel was Authorized to Settle.**

To be sure, whether a settlement agreement is in writing or not, the attorneys compromising a claim must have authority to settle in order to bind their clients.  *Skalbeck v. Agristor Leasing*, 384 N.W.2d 209, 212-13 (Minn. Ct. App. 1986).  That authority, however, can be either express or implied.  *Id.*  "In the absence of express authority, oral settlements are binding under three theories:   (1) ratification; (2) estoppel; and (3) implied acceptance." *Schumann*, 452 N.W.2d at 484 (citation omitted); *accord*, *e.g.*, *Rosenberg v. Townsend, Rosenberg & Young, Inc.*, 376 N.W.2d 434, 437 (Minn. Ct. App. 1985) (recognizing that even "unauthorized settlement of a client's claim by an attorney may be ratified, either impliedly or expressly, by a client, who is thereafter bound by the agreement") (citation omitted).

Here, the Court's inquiry should end with the undisputed testimony that Ms. Ashton participated in the mediation, and that the participating parties left without any question that there was a settlement.  They exchanged pleasantries, and Ms. Ashton even acknowledged her

satisfaction that a settlement was reached.  AA:248-49, 264, 314-15.  Beyond that, there is the post-mediation conduct, which served to ratify the settlement agreement.  *See* Statement of the Facts, II.C, *supra.*  That is, there was the mediator's report, to which no party objected (AA:300-01-336, 394-96, 768-69, Appellees App.:1-2); there was the exchange of draft agreements, to which counsel for Ashton made revisions accepted by the Liquidating Trustee (AA:264-66, 292-93, 301-04, 321-22, 332-36, 343-49, 362-63, 388-89; Appellee's App.:239-94); there was the Minnesota 9019 Order, against which Ashton never objected or sought relief from; there was the November 2012 Status Report filed with the bankruptcy court, to which Ashton never objected (AA:77-108); and there was the bankruptcy court's dismissal order, with which Ashton never took issue (AA:770-71).  These facts, as the bankruptcy court found, reflect a ratification of the settlement, so that Ashton cannot avoid its approval.  (AA:500-03).

The Minnesota Court of Appeals in *Schumann* could have been talking about this case when it said that "a party who voluntarily enters into a settlement agreement cannot avoid the agreement upon determining after consultation with replacement counsel that the agreement has ultimately become disadvantageous or the settlement amount paltry."  452 N.W.2d at 484-85 (citing *Worthy v. KcKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985)).  *See also*, *e.g.*, *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) ("Absent a factual basis rendering it invalid, an oral agreement to settle a claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute….").

Ashton's further suggestion that the bankruptcy court mistakenly relied on Minn. Stat. § 481.08, *see* IB at 24, as applying only to an agreement to settle in open court or in writing and signed, misapprehends the bankruptcy court's explication and oversimplifies the statute and the record.  Here, as the bankruptcy court explained, the circumstances – from the Mediator's report to the exchange of communication between counsel, to the Minnesota 9019 Order, to the Florida bankruptcy court proceedings including the status conference and resulting dismissal order – reflected the settlement agreement's ratification.  And the decision in *Schumann*, which

applied Minn. Stat. § 481.08, held under this statute "that the plaintiff was bound by a settlement agreed to by his former attorney because three months elapsed before the plaintiff made any attempts to repudiate his former attorney's acceptance of the settlement offer." 452 N.W.2d at 484-85. In *Schumann*, settlement negotiations were conducted through the parties' attorney; the plaintiff's attorney sent a letter purporting to accept a settlement offer on behalf of his client, and a copy of the letter was provided to the plaintiff; and Plaintiff did not immediately deny that his attorney had authority to accept a settlement offer and three months elapsed before the opposing side was notified that the plaintiff disputed the settlement or his attorney's authority to accept it. *Id.* at 484. The circumstances here warranted similar treatment by the bankruptcy court.

**V.     The Bankruptcy Court Correctly Ruled, Consistent with its Findings of Fact, that the Purported Unilateral Mistake was Ms. Ashton's Failure to Seek Clarification, Which Would Not Support Rescission.**

A unilateral mistake to support rescission is a mistake by one of the parties as to the subject of the contract, but "testimony about what [a party] believed is not helpful" with respect to one party's mistaken belief as to the terms of a release. *Goldberger v. Kaplan, Strangis & Kaplan, P.A.*, 534 N.W.2d 734, 737 (Minn. Ct. App. 1995). Rather, under Minnesota law, a party seeking rescission based on a unilateral mistake must establish that the mistake was induced by the party seeking the contract's enforcement, or that enforcement would visit a substantial hardship on the party seeking rescission relative to the party seeking enforcement. *Am. Litho, Inc. v. Imation Corp.*, 2010 WL 681275, at *3 (D. Minn. Feb. 23, 2010). Nothing of the sort is reflected in the bankruptcy court evidence presented here.

Here, there was no mistake, that is until well after the oral settlement agreement, and well-after the exchange of drafts that reflected all comments to which the parties consented, at which point Ms. Ashton developed a previously unexpressed view, in hindsight, respecting the scope of the release. *See* IB at 26. As the bankruptcy court recognized, Ashton developed a post-settlement perspective to support a purported unilateral mistake.

The Liquidating Trustee took action in reliance upon the fact that a settlement was in fact reached with notice to Ashton and without her opposition, however.  There is accordingly no evidence of a unilateral mistake, as the bankruptcy court correctly found based on the evidence: Ms. Ashton was never induced to misapprehend the scope of the release, and given the Liquidating Trustees' reliance, the relative hardships weigh in favor of enforcement.

## CONCLUSION

This plainly was a case of Ms. Ashton's change of heart, which is simply not a reason to back out of a binding settlement agreement.  The Liquidating Trustee respectfully requests the Court to affirm in all respects the bankruptcy court's Final Order Approving Settlement, and the underlying Findings of Fact.

Respectfully submitted,

| | |
|---|---|
| Michael S. Budwick | Elliot B. Kula |
|   Florida Bar No. 938777 |   Florida Bar No. 003794 |
| Meland Russin & Budwick, P.A. | W. Aaron Daniel |
| 3200 Southeast Financial Center |   Florida Bar No. 99739 |
| 200 South Biscayne Boulevard | Kula & Associates, P.A. |
| Miami, Florida  33131 | 11900 Biscayne Boulevard, Suite 310 |
| Telephone:  (305) 358-6363 | North Miami, Florida  33181 |
| Facsimile:  (305) 358-1221 | Telephone:  (305) 354-3858 |
| mbudwick@melandrussin.com | Facsimile:  (305) 354-3822 |
| | elliot@kulalegal.com |
| | aaron@kulalegal.com |
| | eservice@kulalegal.com |

By: _____ /s/ Elliot B. Kula _____
                 Elliot B. Kula

*Co-Counsel for Appellee*


## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on August 25, 2014, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system.  I also hereby certify that the foregoing document is being served this day on all counsel or record identified on the Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____ /s/ Elliot B. Kula _____
                 Elliot B. Kula